# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 06-20047-01-DDC** |
| **JOHNNIE K. WILLIAMS, III (01),** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

In 2009, the court sentenced defendant Johnnie K. Williams to life in prison.  After serving more than 16 years in prison,[1] Mr. Williams now has filed an Unopposed Motion to Reduce Sentence under § 404(b) of the First Step Act (Doc. 711).  He argues—and the government agrees—that he's eligible for re-sentencing under the First Step Act.  The court agrees as well.  And, mindful of intervening changes in the law since Mr. Williams's sentencing—most significantly that he would receive a drastically lower sentence were he sentenced today—the court grants Mr. Williams's motion.  It reduces his sentence to time served.  The court explains this conclusion, below.

## I.      Background

In 2009, a jury convicted Mr. Williams of several offenses, including conspiracy to manufacture, to possess with intent to distribute, and to distribute 50 grams or more of crack cocaine, within 1,000 feet of a public elementary school.  Doc. 453 (Judgment).[2]  At that time,

---

[1]      Mr. Williams was detained in 2006 and held for three years before his trial.  *See* Docs. 2 & 24.

[2]      A jury also convicted Mr. Williams of several crack cocaine distribution offenses, felon in possession of a firearm, and use of a communication facility in committing a crime.  Doc. 453

this offense triggered a penalty of 10 years to life imprisonment.  *See* 21 U.S.C. §
841(b)(1)(A)(iii) (2006).  The court sentenced Mr. Williams to life imprisonment.  Doc. 453
(Judgment).  Two factors drove this sentence.

*First*, Mr. Williams's Guidelines range contemplated a life sentence.  Mr. Williams's
Presentence Investigation Report (PSR) held him accountable for 1.49 kilograms of crack
cocaine.  PSR ¶ 63; *see also* Doc. 715 at 1 (U.S. Probation Memorandum, dated August 10,
2022, ¶ 4).[3]  Based on this amount, the PSR calculated an offense level of 34.  PSR ¶ 72.  The
PSR then applied:  (1) a one-point enhancement for Mr. Williams's conviction of distributing
crack cocaine within 1,000 feet of a school, violating 21 U.S.C. § 860(a); (2) a two-point
enhancement for possessing a firearm; and (3) a four-point enhancement for Mr. Williams's
organizing role in the offense.  *Id.* ¶¶ 72–75.  Mr. Williams thus had a total offense level of 41.
*Id.* ¶ 81.  Mr. Williams also had a criminal history category of V.  *Id.* ¶ 96.  But two prior sale of
cocaine offenses under Kansas law designated him as a career offender—increasing his criminal
history category to VI.  *Id.* ¶¶ 86, 91, 96.  Mr. Williams's total offense level of 41 and criminal
history category of VI produced a Guidelines range of 360 months to life imprisonment.  *Id.* ¶
119.

*Second*, Mr. Williams's past drug offenses required a life sentence.  The government filed
a sentence enhancement notice under 21 U.S.C. § 851.  *See* Doc. 264.  The government based
this enhancement notice on Mr. Williams's three past convictions under Kansas law for (1)
"Sale, Deliver or Distribute, Cocaine and Possession of Cocaine" in July 2002, (2) "Sale, Deliver

---

(Judgment).  But Mr. Williams's conspiracy offense within 1,000 feet of a public elementary school—
Count I—drove his life sentence.

[3]    The PSR doesn't appear on CM/ECF.  *See* Doc. 449 (Minute Entry noting that PSR "is made a
part of the official record" and is "maintained under seal").  The court has reviewed the PSR and cites it
by paragraph number in this Order.

or Distribute, Cocaine" in November 2003, and (3) "Possession of Cocaine" also in November 2003. *Id.* at 1. Given this § 851 enhancement notice, the law in 2009 required the court to sentence Mr. Williams to life in prison for conspiracy to distribute 50 grams or more of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2006). The court thus sentenced Mr. Williams to life in prison for that offense, with all other sentences to run concurrently, "for a controlling sentence of life." Doc. 453 at 3 (Judgment).

## II.     Legal Standard

After the court imposes a defendant's sentence, it's typically forbidden from modifying it. But 18 U.S.C. § 3582(c) permits the court to reduce a sentence in limited circumstances. Specifically, under § 3582(c)(1)(B), the court may modify an imposed term of imprisonment "to the extent . . . expressly permitted by statute[.]" Section 404(b) of the First Step Act of 2018, 115 Pub. L. 391, 132 Stat. 5194, provides such express permission. *United States v. Mannie*, 971 F.3d 1145, 1156 (10th Cir. 2020) (noting that "the court's jurisdiction to hear a [First Step Act] motion arises from § 3582(c)(1)(B)").

Section 404(b) of the First Step Act permits courts to apply the Fair Sentencing Act of 2010 retroactively to "covered offenses" committed before August 3, 2010. "Covered offenses" means offenses affected by §§ 2 or 3 of the Fair Sentencing Act. First Step Act § 404(a). Relevant here, § 2 of the Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum[.]" *Dorsey v. United States*, 567 U.S. 260, 269 (2012).

Once the court determines eligibility for resentencing under the First Step Act—*i.e.*, whether defendant committed a "covered offense"—the court has discretion "to impose a

reduced sentenced as if the Fair Sentencing Act were in effect at the time the covered offense was committed[.]" *United States v. Crooks*, 997 F.3d 1273, 1278 (10th Cir. 2021) (quotation cleaned up). To guide this discretion, the Supreme Court recently instructed district courts first to "calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." *Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022); *see also United States v. Burris*, 29 F.4th 1232, 1235 (10th Cir. 2022) ("[A] district court is obligated under the First Step Act to correctly calculate the defendant's revised Guidelines range prior to exercising its discretion to grant or deny relief."). With that newly calculated Guidelines range serving as a "benchmark[,]" the court then may "consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Concepcion*, 142 S. Ct. at 2402 n.6, 2404. The court applies these principles to Mr. Williams's motion, below.

## III.    Analysis

To begin, Mr. Williams is eligible for resentencing under the First Step Act. In 2009, a jury convicted him of conspiracy to distribute 50 grams or more of crack cocaine. Doc. 453. At that time, this offense triggered a penalty of 10 years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2006). But, in 2010 (the year after Mr. Williams was convicted), the "Fair Sentencing Act increased the threshold quantity of crack cocaine required to trigger § 841(b)(1)(A)(iii) from 50 to 280 grams or more." *Crooks*, 997 F.3d at 1278. The First Step Act, passed eight years later, made those changes retroactive. *Id.* at 1275. As a result, Mr. Williams, who was "convicted of conspiracy to distribute 50 grams or more of crack cocaine" at a time when "the statutory penalty for [that] crime was 10 years to life imprisonment" is "eligible for resentencing under the First Step Act[.]" *Id.* at 1278 (holding that "a defendant's federal offense of conviction, not his underlying conduct, determines First Step Act eligibility").

The court thus decides the first step when determining whether to reduce Mr. Williams's sentence:  it "calculate[s] the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense."  *Concepcion*, 142 S. Ct. at 2402 n.6.  The U.S. Probation Office (USPO) has recalculated Mr. Williams's Guidelines range as if the Fair Sentencing Act's amendment were in place at the time of his offense.  Doc. 715 (USPO Memorandum, dated August 10, 2022).  The court adopts that Memorandum's calculation. Applying the Fair Sentencing Act's amendments, Mr. Williams's total offense level is 39 and his criminal history category is V—producing a Guidelines range of 360 months to life imprisonment.  *Id.* at 2.  This Guidelines range serves as the "benchmark" to determine "whether and how much to reduce [Mr. Williams's] sentence."  *Concepcion*, 142 S. Ct. at 2402 & n.6.  But it is only that—a benchmark.

The First Step Act allows the court to consider other information raised by the parties "to inform its decision whether and how much to reduce a sentence."  *Id.* at 2402; *see also id.* at 2402–03 (listing "evidence of postsentencing rehabilitation[,] unrelated Guidelines amendments[,]" "nonretroactive Guidelines amendments[,]" and whether a defendant would qualify as a career offender as "relevant and probative information" that "help[s] inform whether to reduce sentences at all, and if so, by how much"); *United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) ("[*Concepcion*] held that, when substantive changes made by the First Step Act (principally reductions in the authorized ranges for crack-cocaine crimes) entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing.").  Mr. Williams raises—and the government doesn't oppose—three relevant considerations.  The court addresses each, in turn.

*First*, were Mr. Williams sentenced today, the § 851 enhancement to a mandatory life sentence wouldn't apply.  As the District of Maryland has explained,

> [S]ection 401 of the [First Step] Act amended the sentencing enhancements under 21 U.S.C. § 851 in two relevant ways.  It reduced the mandatory minimums following a section 851 notice from 20 to 15 years for one qualifying conviction and from life to 25 years for two or more qualifying convictions.  21 U.S.C. § 841(b)(1)(A).  In addition, the amendment altered the kinds of convictions for which a section 851 enhancement could apply, including changing the broad "felony drug offense" category (comprising simple drug possession) to the much narrower "serious drug felony" category (comprising manufacture or distribution punishable by at least 10 years, for which the defendant served at least 12 months within the last 15 years).  *See* 21 U.S.C. § 802(44), (57).

*United States v. Sappleton*, Crim. No. 01-284-PJM-3, 2021 WL 598232, at *2 (D. Md. Feb. 16, 2021); *see also United States v. Day*, 474 F. Supp. 3d 790, 795–96 (E.D. Va. 2020).  This change is relevant for Mr. Williams because he received suspended sentences in two of his prior Kansas drug offenses that the government relied on to file the § 851 enhancement.  PSR ¶¶ 86, 91.  For those two offenses, Mr. Williams completed the Labette County Conservation Camp.  Kansas law treated Labette as an alternative to imprisonment, before the facility was closed years ago.  *See* Kan. Stat. Ann. 2006 Supp. § 21-4603d(g) (repealed) (requiring sentencing courts in certain circumstances to "consider placement of the defendant in the Labette correctional conservational camp" and prohibiting "imprisonment if space is available in a conservation camp"); *see also State v. Bee*, 179 P.3d 466, 468 (Kan. Ct. App. 2008) (discussing § 21-4603d(g)'s requirement for sentencing courts to consider "Labette and other nonprison sanctions").

Thus, Mr. Williams didn't serve more than 12 months' imprisonment for either of those prior offenses, as now is required for a § 851 enhancement to a life sentence.  *See United States v. Williams*, No. 5:12-cr-14, 2020 WL 5834673, at *2 (W.D. Va. Sept. 30, 2020) ("While any state or federal drug offense punishable by imprisonment for more than one year qualified as a 'felony drug offense,' to qualify as a 'serious drug felony,' the First Step Act now requires that

'the offender served a term of imprisonment of more than 12 months.'" (quoting 21 U.S.C. § 802(57)).  Because Mr. Williams's § 851 enhancement doesn't include two "serious drug felonies" for which Mr. Williams served more than 12 months in prison, the mandatory life sentence wouldn't apply were he sentenced today.  *See United States v. Steele*, No. 10-20037-01-JWL, 2021 WL 2711176, at *2 (D. Kan. July 1, 2021) (finding, under "the new benchmark for § 851 enhancements" that an offense for which a defendant "received a sentence of two years' probation for the offense, with a suspended term of two years' imprisonment" "would not qualify as a 'serious drug felony' because [defendant] served no time in prison, much less the minimum twelve months now required by the statute"); *see also United States v. Nichols*, No. 02-40098-JAR, 2020 WL 6134467, at *4 (D. Kan. Oct. 19, 2020) (finding that state drug possession conviction "would not qualify as a 'serious drug felony'—the new benchmark for § 851 enhancements—because [defendant] served less than twelve months" in prison for the conviction).

*Second*, the career offender enhancement also no longer applies to Mr. Williams.  That enhancement "applies to a defendant convicted of a 'controlled substance offense' who 'has at least two prior felony convictions of either a crime of violence or a controlled substance offense.'"  *United States v. Madkins*, 866 F.3d 1136, 1144 (10th Cir. 2017) (quoting U.S. Sent'g Guidelines Manual § 4B1.1(a)).  When the court sentenced Mr. Williams, his instant federal drug conspiracy offense and prior Kansas drug convictions triggered the career offender enhancement.  But, since then, our Circuit has clarified that a "drug conspiracy conviction of 21 U.S.C. § 846 is not a 'controlled substance offense' within the meaning of the career offender guideline."  *Crooks*, 997 F.3d at 1279–80 (concluding that the generic definition of "conspiring"—as used in the career offender guideline—requires an overt act, and thus, is a "categorical mismatch" for

conspiracy under 21 U.S.C. § 846, which "does not require an overt act" (internal quotations omitted)).  Also, the Tenth Circuit since has clarified that Kansas convictions for possession with intent to sell cocaine "are not controlled substance offenses for purposes of the career-offender enhancement."  *Madkins*, 866 F.3d at 1145; *see also id.* at 1148 (finding a categorical mismatch between the career offender guidelines' definition of a controlled substance offense and a Kansas "conviction for possession with intent to sell a controlled substance—where sale is defined to include an offer" because the latter "is broader than the conduct criminalized" in the former).  For those two reasons, the career offender enhancement no longer applies to Mr. Williams.  *See Crooks*, 997 F.3d at 1278–79 (concluding that "a career offender designation [is] reviewable in a First Step Act motion" because the First Step Act "'allows a district court to at least consider [a defendant's] claim that sentencing him as a career offender would be error given subsequent decisional law that clarifies (not amends) the related career offender provision at issue'" (quoting *United States v. Brown*, 974 F.3d 1137, 1139 (10th Cir. 2020))).  As a result, Mr. Williams's criminal history category reduces from VI to V.  Doc. 715 at 2 (USPO Memorandum, dated August 11, 2022).

*Third*, were Mr. Williams sentenced today, the government would recommend a downward variance from the Guidelines range, disregarding the current sentencing disparity between powder cocaine and crack cocaine.  The government has taken this position on at least one First Step Act motion filed in our court.  *See United States v. McKinney*, No. 06-20078-JWL, 2022 WL 1136189, at *2 (D. Kan. Apr. 18, 2022) (agreeing with defendant that, "if sentenced today, he would likely receive the benefit of the Department of Justice's current policy recommending that judges sentence defendants convicted of crack offenses without regard to the 18:1 ratio for crack/powder cocaine that still exists in the Guidelines" because "the government

agree[d] that the Department of Justice supports the Eliminating a Quantifiably Unjust Application of the Law ("EQUAL") Act, Senate Bill 79, which would eliminate the distinction between cocaine and crack cocaine for sentencing purposes under 21 U.S.C. § 841(b)(1)(A) and (B)"). And the government has taken this position in sentencings before the undersigned judicial officer. *See, e.g.*, Sentencing Agreement at 2, *United States v. Banks*, No. 13-40060-01-DDC (D. Kan. Nov. 30, 2021), ECF No. 1541 (noting that "the government concurs with the defendant's request that he be sentenced without regard to the 18:1 crack/powder [cocaine] disparity"). The government agrees with Mr. Williams that, were he sentenced today, he would receive the benefit of a government recommendation that the court sentence him "based on the powder cocaine guideline." Doc. 711 at 11. Applying that approach produces a base offense level of 25. Doc. 715 at 3. The same enhancements Mr. Williams received at his original sentencing still apply, producing a total offense level of 31. *Id.* With a criminal history category of V, Mr. Williams's Guidelines range—disregarding the crack and powder cocaine disparity—is 168 to 210 months' imprisonment. *Id.* In effect, the parties agree that they would recommend a downward variance from the benchmark Guidelines range, *i.e.*, 360 months to life.

Mindful of all these changed circumstances, the court finds that Mr. Williams would receive a drastically different sentence today than the mandatory life sentence he received in 2009. The court also notes that Mr. Williams committed his offenses at age 25, when he was relatively young. And, since his incarceration, Mr. Williams has earned his GED, completed drug education, and participated in several educational courses. Doc. 711 at 17. While he's had several disciplinary infractions since he began his incarceration, he's had no disciplinary issues for the last five years. *See id.* at 19–21. These individualized circumstances, combined with the substantially lower sentence Mr. Williams would receive today, convince the court to exercise its

discretion and reduce Mr. Williams's sentence.  Mr. Williams has served time in prison or pretrial detention since April 2006.  He's thus served 196 months' imprisonment, more than 16 years.  While that term is far below Mr. Williams's benchmark Guidelines range of 360 months to life, it's towards the high end of the Guidelines range when one disregards the crack and powder cocaine disparity.  This significant difference demonstrates to the court how much the law has changed (and continues to change) since the court sentenced Mr. Williams.  And it convinces the court to exercise its discretion to reduce Mr. Williams's sentence "consistent with what the parties agree would be the applicable Guidelines range if [he] were sentenced today." *McKinney*, 2022 WL 1136189, at *2 (reducing First Step Act movant's sentence to the low-end of the Guidelines range, calculated without the crack/powder cocaine disparity (292–365 months), even though Guidelines range calculated with disparity (360 months to life) remained unchanged from the original sentencing).

The court also finds it significant that the government supports Mr. Williams's motion. In effect, the government agrees that the time Mr. Williams already has served adequately provides just punishment, reflects the seriousness of the offense, and promotes respect for our laws.  *See* 18 U.S.C. § 3553.  The court agrees.  It thus concludes, in its discretion, to reduce Mr. Williams's sentence to time served, *i.e.*, 196 months.  But the court leaves in place the 12-year term of supervised release that the court imposed when it first sentenced Mr. Williams in 2009. *See* Doc. 453 at 4.

## IV.    Conclusion

Mr. Williams was sentenced to life in prison.  Given significant changes in the law, demonstrated individual rehabilitation, and all other reasons described above, the court exercises its discretion under the First Step Act to reduce Mr. Williams's sentence to time served.  But the

12-year term of supervised release and the other components of his sentence remain undisturbed.[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Johnnie K. Williams, III's Unopposed Motion for Sentence Reduction (Doc. 711) is granted.  The court reduces the custody component of Mr. Williams's sentence to time served.

**This order is stayed for up to 14 days** to allow the United States Probation Office to coordinate a release plan for Mr. Williams.

Mr. Williams shall begin the previously imposed term of supervised release immediately upon his release from the Bureau of Prisons.  All previously imposed terms and conditions of supervised release remain in effect.

**IT IS SO ORDERED.**

**Dated this 23rd day of August, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[4]     Neither party has suggested a reason to modify the other components of the sentence.